# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 17, 2016

## STATE OF TENNESSEE v. IKE O. NWANGWA

**Appeal from the Circuit Court for Blount County**
**No. C-22635    Tammy Harrington, Judge**

_____

**No. E2015-01086-CCA-R3-CD – Filed April 20, 2016**

_____

A Blount County jury convicted the Defendant, Ike O. Nwangwa, of Count 2, operating a motor vehicle while his blood alcohol concentration was .08% or more but acquitted him of Count 1 Driving Under the Influence ("DUI"). The trial court sentenced the Defendant to eleven months and twenty-nine days, with two days to be served in jail followed by supervised probation. On appeal, the Defendant contends that the trial court erred by accepting the guilty verdict to Count 2 when the jury acquitted him of Count 1. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT H. MONTGOMERY, JR., J., joined.

Mack Garner, District Public Defender; Ryan Desmond and Mark Garner, Assistant Public Defenders, Maryville, Tennessee (at trial); J. Liddell Kirk, Knoxville, Tennessee (on appeal), for the appellant, Ike O. Nwangwa.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Michael L. Flynn, District Attorney General; and Ryan Desmond, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
## I. Facts

This case arises from the Defendant's arrest for DUI on March 27, 2013. A Blount County grand jury indicted the Defendant on two counts: Count 1, was DUI; and Count 2, operating a motor vehicle while the alcohol concentration was 0.08% ore more.

1

At his trial on these charges, the parties presented the following evidence: Israel Hernandez, an officer with the Alcoa Police Department, testified that on March 27, 2013, he was dispatched to the K&S Market in response to a caller who reported that there were two men who seemed impaired and were in a blue and gray van with a license tag of E62-94X. When he arrived at the market, Officer Hernandez saw a vehicle matching that description exiting the parking lot. The vehicle was located at a stop sign, and Officer Hernandez noted that one of the brake lights appeared inoperative. Officer Hernandez testified that he initiated a traffic stop, and, when the vehicle stopped, it blocked the entrance to a shopping center. Officer Hernandez found this unusual.

Officer Hernandez testified that as he approached the vehicle he noted that the Defendant was driving. The officer informed the Defendant about the reason for the stop and asked the Defendant for his driver's license, insurance, and registration. The Defendant did not have his driver's license with him but was able to produce the remaining documents. Officer Hernandez noted that the Defendant had glassy eyes, slurred speech, and the officer smelled the strong odor of alcohol emanating from the Defendant.

The Defendant told Officer Hernandez that he had consumed one glass of wine. Officer Hernandez asked the Defendant to exit his vehicle, and he noticed that the Defendant was unsteady on his feet. Officer Hernandez conducted three field sobriety tasks, upon all of which the Defendant performed "poorly."[1] Officer Hernandez arrested the Defendant and asked the Defendant to submit to a blood alcohol test. The Defendant signed the Implied Consent Advisement indicating that he consented to a blood alcohol test.

During cross-examination, Officer Hernandez testified that the Defendant was cooperative and attempted to comply with the officer's requests. The officer agreed that the Defendant spoke with a foreign accent and appeared to have trouble understanding all of the officer's instructions. He agreed that some people not under the influence have trouble performing field sobriety tasks.

Margaret Massengill, an agent with the Tennessee Bureau of Investigations crime laboratory, testified that she analyzed the Defendant's blood in this case. She said that her analysis showed that the Defendant's blood alcohol level was 0.16%. She estimated that a 180-pound male would need to consume between five and seven drinks to reach that blood alcohol level, keeping in mind that the amount would vary depending upon the time frame in which the drinks were consumed. Agent Massengill stated that cold medication would not alter the alcohol analysis. The agent said that this level of blood

---

[1] The officer video recorded the field sobriety tasks, and the recording was played for the jury. The recording is not, however, included in the record.

alcohol content would likely cause impairment.

During cross-examination, Agent Massengill agreed that some cough syrup contained alcohol. The agent confirmed that "most" of the population would be impaired at 0.16% blood alcohol content.

The Defendant testified that, before his arrest in this case, he had been at a restaurant in Alcoa, Tennessee. He arrived at the restaurant between 7:00 and 8:00 p.m. and had not consumed any alcohol before arriving. The Defendant said that he consumed two glasses of red wine and ordered food. After eating with his friend "Libby," whom he had only known for a week, the two left the restaurant to return to the Defendant's home. The Defendant agreed that he had trouble performing the field sobriety tasks, but he explained that he had lower back pain and difficulty standing on one leg. The Defendant said that he asked the officer if he could take a breath test at the scene, because he wanted to prove he was not intoxicated. The Defendant said that, after he was arrested, he agreed to take the blood alcohol test because he knew that he had only consumed two glasses of wine so he "was confident [to] take the test."

The Defendant explained why he did not have his wallet with him that evening. He stated that "Libby" had asked him to go out, but he declined, using the excuse that he did not have his wallet. She called back saying that she had "coupons" she must spend, so he agreed to meet her. He said that, because he told her he did not have his wallet, he did not bring it with him. The Defendant said that he did not know that one of his taillights was not working and that he would not have driven if he was impaired.

During cross-examination, the Defendant testified that he was at the restaurant for close to three hours.

Based upon this evidence, the jury convicted the Defendant of Count 2, operating a motor vehicle while the alcohol concentration in his blood was 0.08% or more, and acquitted him of Count 1, DUI. The trial court sentenced the Defendant to eleven months and twenty-nine days, two days of which was to be served in jail followed by supervised probation.

It is from this judgment that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it accepted the jury's verdict of guilt as to Count 2 because the jury had found him not guilty of Count 1. He contends that, because these verdicts are inconsistent, his conviction cannot stand.

The State counters that a jury's inconsistent verdict may stand if the Court determines that the evidence is sufficient to support the conviction. The State further asserts that the evidence is sufficient to support the Defendant's conviction. We agree.

Inconsistent verdicts are unassailable absent a legal insufficiency. *State v. Davis*, 466 S.W.3d 49, 73 (Tenn. 2015) (concluding that this rule applied when the jury, in one count, convicted the defendant of second degree murder, thereby establishing that he committed a knowing killing and then, on the second count, the jury acquitted the defendant of second degree murder, choosing instead to convict the defendant of reckless homicide). The Tennessee Supreme Court stated, "We continue to agree with the significant majority of jurisdictions that inconsistent jury verdicts are not a basis for relief." *Id.* The verdicts are still subject, however, to analysis of whether the evidence is sufficient to sustain them. *Id.* at 72.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e), *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*, 493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be

4

given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences that may be drawn from the evidence. *Goodwin*, 143 S .W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

The Defendant in this case was convicted of operating a motor vehicle when: "The alcohol concentration in [his] blood or breath is eight-hundredths of one percent (0.08%) or more." T.C.A. § 55-10-401. Officer Hernandez stopped the Defendant while he was operating his motor vehicle. The officer asked the Defendant to submit to a blood alcohol test, and the Defendant agreed. Agent Massengill testified that the blood test revealed that the Defendant's blood alcohol content was 0.16%, greater than the required 0.08%. The evidence is sufficient to support the Defendant's conviction. He is not entitled to relief on this issue.

## III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE